IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 18 CR 249 |
| v. ) | |
| ) | Judge Charles R. Norgle, Sr. |
| DUSHAUN HENDERSON-SPRUCE ) | |

**DEFENDANT DUSHAUN HENDERSON-SPRUCE'S SENTENCING MEMORANDUM**

Mr. Henderson-Spruce stands before this Court after pleading guilty to one count of mail fraud. He accepts responsibility for his actions and is prepared to serve a just sentence. Mr. Henderson-Spruce has already served approximately eleven months in custody, and is well into his recommended guideline range of 8 to 14 months. Mr. Henderson-Spruce, by the Federal Defender Program and its attorney, **Amanda G. Penabad**, therefore requests that the Court impose a within-guidelines sentence of **time served and short-term placement in the Salvation Army**.

**SUMMARY OF SENTENCING POSITION**

This sentencing is scheduled for Friday, March 29. The parties agree with the Probation Office's calculation of the Guidelines, which results in an advisory sentencing range of 8-14 months. There is significant mitigation present in Mr. Henderson-Spruce's case. Accordingly, Mr. Henderson-Spruce submits that a within-guideline sentence of time served is sufficient but not greater than necessary in this case, in accordance with 18 U.S.C. §§3584(b); 3553(a), for all of the following reasons:

- As noted below, Mr. Henderson-Spruce pled guilty promptly upon receipt of final discovery in the case. He has accepted full responsibility for his offense.

- Mr. Henderson-Spruce experienced an exceptionally unstable childhood as a result of his mother's significant mental illnesses. Despite his best efforts, he was unable to care for his mother and the stress of her outbursts drove Mr. Henderson-Spruce to make a poor choice in a desperate effort to change his circumstances.

- Mr. Henderson-Spruce has minimal criminal history, and has never spent a significant amount of time in jail. This eleven-month stint in federal custody is sufficient to deter him from engaging in criminal conduct ever again.

- Additionally, Mr. Henderson-Spruce was 23 years old at the time of the offense, and recent brain science, already embraced by courts, tells us that the region of the brain that inhibits risky behavior is not fully formed until the mid-twenties. Mr. Henderson-Spruce's relative youth, and the brain science thereon, helps to explain why he engaged in such a blatant fraud that could not possibly have escaped detection for long. As one pediatric psychiatric researcher has put it, ""[t]eenagers' brains are not broken; they're just still under construction."

## PROCEDURAL BACKGROUND

Mr. Henderson-Spruce does not dispute the facts related to the offense as they are recounted in the PSR. (PSR ¶¶ 26 - 29) As relevant here, Mr. Henderson-Spruce fraudulently filled in information on a USPS Form PS 3546 that instructed the USPS to change the registered corporate address of Corporation A from the corporation's actual address in Atlanta, Georgia, to the address of the Henderson-Spruce residence. Mr. Henderson-Spruce then removed from the delivered mail checks totaling $58,718 and deposited them in his bank account. On May 5, 2018, Mr. Henderson-Spruce was arrested by federal agents; his bank account was subsequently frozen and $51,607.09 in funds were seized.

Mr. Henderson-Spruce was arraigned on an indictment on June 6, 2018. Once the government made its final discovery production in October, Mr. Henderson-Spruce promptly declared his intention to plead guilty at the next status date in November 2018.

## DISCUSSION

As this Court is well aware, after *Booker*, the United States Sentencing Guidelines are merely "advisory," and sentencing courts are required to consider all of the factors listed in 18 U.S.C. § 3553(a) when imposing sentence. *United States v. Booker*, 543 U.S. 220, 245 (2005). After considering the factors, the Court must "impose a sentence sufficient, *but not greater than necessary*, to comply with" the purposes of sentencing. 18 U.S.C. § 3553(a) (emphasis added). This parsimony

provision serves as the "overarching" command of the statute. *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007). In this case, a within-guideline sentence of time served meets the §3553(a) goals of sentencing.

**I.   Mr. Henderson-Spruce's Extreme Childhood Instability and Inability to Care For His Mentally Ill Mother Caused Him to Take Desperate Measures to Escape His Situation — 18 U.S.C. § 3553(a)(1), (a)(2)(A).**

Mr. Henderson-Spruce's childhood was marked by significant instability. He never knew his father, and his mother suffered from significant mental health issues for as long as Mr. Henderson-Spruce can remember. Although Mr. Henderson-Spruce believes his mother's primary diagnosis is schizophrenia, his uncle noted that she also suffers from bipolar disorder and other mental health conditions. PSR at ¶93. Due to his mother's challenges, Mr. Henderson-Spruce and his mother lived with his maternal grandparents for most of his early childhood.

As a child, Mr. Henderson-Spruce had no understanding of his mother's condition. His family members did not explain the diagnosis or the disease to him – he merely understood that his mother was "crazy." Mr. Henderson-Spruce recalls that she would have outbursts and fights with family members, and that his grandparents would take her to the hospital for stretches at a time. PSR at ¶75. There would be days when she was missing and Mr. Henderson-Spruce would not understand why, nor would he have the opportunity to say goodbye. His mother's frequent absences, and his inability to understand why she was being taken away, left him confused and afraid.

When he was six years old, Mr. Henderson-Spruce's grandmother passed away. She had been Mr. Henderson-Spruce's primary caregiver, and had essentially raised him in his mother's functional and physical absence. PSR at ¶73. Mr. Henderson-Spruce felt profound loss at her passing, as he felt that she was the only family member that loved him. Mr. Henderson-Spruce worried neither his grandfather nor his mother truly cared for him. Nor were they totally able to properly take care of him; Mr. Henderson-Spruce remembers one of his teachers figured out that something was amiss in Mr. Henderson-Spruce's home life when he wore the same clothes to school days in a row. When his grandfather passed away a short time later, Mr. Henderson-Spruce moved in with his uncle, Derrick Henderson. When asked about Mr. Henderson-Spruce's childhood, Derrick succinctly described it as "abuse," noting that Mr. Henderson-Spruce always lacked stability. PSR at ¶77.

Mr. Henderson-Spruce spent only a short time living with his uncle before he was transferred to his Aunt Terri's custody. He spent approximately the next ten years living with his aunt, rarely seeing his mother, who was institutionalized on and off. Mr. Henderson-Spruce visited his mother at times, but it was hard for him to see her in such a setting. According to Mr. Henderson-Spruce, the institution was akin to a prison, and extremely depressing.

At age 17, Mr. Henderson-Spruce moved out of his aunt's house and in with a cousin. He focused on finding steady work to support himself and trying to learn skills that would lead to a career. He enrolled in classes at Kennedy King College, but

decided that the classes weren't furthering his education in the way he had hoped. Although he wanted to apply to a four-year college, he didn't know how to apply, and didn't know anyone who had experience applying or could help him. Instead, he focused on finding a job to support himself. While working at temporary jobs, Mr. Henderson-Spruce gained an insurance provider's license and sold insurance policies on the side, trying to exercise his entrepreneurial spirit. His fledgling independence was complicated after a few years when his mother was released from the institution and the family decided that it would be best if Mr. Henderson-Spruce lived with her. Mr. Henderson-Spruce didn't have the funds to support himself on his own, and despite his reluctance to take on his mother's care, he was forced to move in with her. Only 20 years old, Mr. Henderson-Spruce felt ill-equipped to deal with his mother's outbursts and needs; she routinely screamed and called out loudly for extended periods such that the neighbors would call the police. Although his relationship with his mother had been positive when he was a child, his mother now essentially refused to acknowledge or interact with him, despite the fact that they lived in the same home. Mr. Henderson-Spruce felt that the rest of his family had turned their backs on him. His aunt and uncle did not offer support – financial, emotional, or otherwise – and Mr. Henderson-Spruce was both overwhelmed and socially isolated. PSR at ¶94. Additionally, Mr. Henderson-Spruce's family, friends, and job were on the south side, and his mother's new apartment was nearly twenty miles north. The move uprooted Mr. Henderson-Spruce from the sources of stability he had managed to secure, and

brought him back to the start. Then, shortly before his arrest, his mother returned to the institution and Mr. Henderson-Spruce was forced to vacate her apartment because he could not pay the rent. He lived at a halfway house in Maywood for a short time before his arrest.

Mr. Henderson-Spruce's mother's illnesses and the resulting instability in his life took a significant toll on Mr. Henderson-Spruce. As a child, he often felt isolated and unloved because he couldn't understand his mother's emotional and physical distance from him. This childhood frustration reasserted himself when Mr. Henderson-Spruce moved in with his mother again at age 20. Although he physically lived in the same apartment as his mother, Mr. Henderson-Spruce felt he could not connect with her and she wanted nothing to do with him. In addition to these feelings of loneliness and distance, Mr. Henderson-Spruce experienced a lack of support from other family members once he reached the age of maturity. His extended family's inability or unwillingness to care for and support his ill mother translated into a lack of familial support for Mr. Henderson-Spruce himself. As a result, Mr. Henderson-Spruce was left to financially and emotionally support himself, in addition to supporting a vulnerable and difficult mother.

Studies have shown that individuals who grow up with a parent afflicted with schizophrenia are more likely to struggle with emotional instability and social isolation, and are more likely to experience childhood abuse, neglect, isolation, and guilt. *See* Herbert, H. S., Manjula, M., & Philip, M. (2013). "Growing up with a parent

having schizophrenia: Experiences and resilience in the offsprings." Indian Journal of Psychological Medicine, 35(2), 148-153. Mr. Henderson-Spruce's extremely unstable and difficult childhood was undoubtedly an influence in his wayward behavior. At the time of the offense, Mr. Henderson-Spruce was living with his ill mother and struggling to support the two of them. He was desperate to be able to live on his own, away from his mother. The isolation of being far from friends and family, the constant stress of his mother's psychotic episodes, and the confusion of his mother's seeming lack of care or acknowledgement of him drove him to take drastic measures to try to escape his situation.

Mr. Henderson-Spruce now recognizes that such schemes are not worth the risk of incarceration. As detailed below, this is Mr. Henderson-Spruce's first custodial sentence, and he has keenly felt the loss of his freedom. This experience has set Mr. Henderson-Spruce on a new path. His goal is to move past this serious mistake and lead a productive, law –abiding life.

> II. **Mr. Henderson-Spruce's Minimal Criminal History is a Strong Indicator That He is Not an Individual Prone to Engaging in Criminal Conduct, and the Court Need Not Sentence Him to a Lengthy Term of Imprisonment to Achieve Adequate Deterrence, 18 U.S.C. § 3553(a)(2)(C).**

The PSR found that Mr. Henderson-Spruce has a single criminal history point stemming from a misdemeanor conviction for marijuana possession that was punished by a fine. Mr. Henderson-Spruce has never received a custodial sentence. *See* PSR, ¶¶ 59-60. It is therefore likely that this eleven-month sentence, which is a

significant amount of time for an individual who has never served any time, will have a significant deterrent effect on Mr. Henderson-Spruce. As many courts have acknowledged, individuals who have never served custodial sentences do not require significant custodial sentences in order to deter future conduct. *See, e.g., United States v. Qualls,* 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend."); *United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001) (in a drug conspiracy case with an adjusted offense level of 29, noting that, "if a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offenses might be expected to have the requisite deterrent effect"); *United States v. Hammond*, 240 F. Supp. 2d 872, 880 (E.D. Wis. 2003) (in a racketeering case, noting that "if the defendant's prior sentences were measured in months or days, a federal sentence of just a few years would likely provide a significant deterrent"). Mr. Henderson-Spruce is distinct from individuals who have already served significant custodial sentences and continue to re-offend, and additional time in custody is not necessary to deter him from recidivating.

**III. The Supreme Court has recognized that youthful offenders such as Mr. Henderson-Spruce are often less culpable because of their immaturity in decision-making.**

Mr. Henderson-Spruce's youth likely played a large part in his ill-advised and immature decision to engage in this fraud. As current scientific research on brain

9

development demonstrates, the region of the brain governing judgment, reasoning, impulse control, and the ability to accurately assess risks and foresee consequences is not fully formed until the early to mid-twenties. Mr. Henderson-Spruce acted recklessly and with poor judgment, but his impulsive actions here need not define him going forward. As the Supreme Court has recognized, youthful offenders have a significant capacity to reform because the impulsivity of youth fades. *See Roper v. Simmons*, 543 U.S. 551, 570 (2005) ("The relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside.") (internal quotation marks and citation omitted).

In fact, research on youthful offenders counsels against a lengthy prison sentence for Mr. Henderson-Spruce. Prison exposes less serious offenders to more serious offenders, breaks family ties, and significantly reduces the ability to earn a living legally. In contrast, "[t]he relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures." At this point in his life, Mr. Henderson-Spruce has the renewed support of his family, particularly his uncle. It appears that this arrest has awoken the family to the difficult circumstances Mr. Henderson-Spruce has been in, and his uncle has agreed to provide Mr. Henderson-Spruce with a job at his restaurant once he is released from custody. Mr. Henderson-Spruce has also voiced a desire to reconnect with his uncle, cousins, and cousins' children, and strengthen his familial

support system going forward. He is focused on his goals of gaining a steady job and stable home, and hopes to one day start a family of his own.

**PROPOSED CONDITIONS OF SUPERVISED RELEASE**

Mr. Henderson-Spruce requests that the Court enable to him to reside at the Salvation Army for the first three months of his term of supervised release. Most individuals in the BOP are given a short-term placement at a halfway house towards the end of their custodial sentence in order to ease their transition back to the community. Because Mr. Henderson-Spruce has already served a guideline sentence and is asking for a sentence of time-served, he will not be afforded this transition opportunity by the BOP. Additionally, as discussed above, Mr. Henderson-Spruce does not have the resources to rent his own apartment upon release, and his family members are unable to provide him with a temporary living space. Residence at the Salvation Army will allow Mr. Henderson-Spruce time to find a job and save some money before moving out on his own. The Probation Office supports Mr. Henderson-Spruce's request for placement. Mr. Henderson-Spruce further requests that the Court waive the subsistence fee costs at the Salvation Army.

Mr. Henderson-Spruce has no objection to the four mandatory conditions of supervised release suggested by the Probation Office. Mr. Henderson-Spruce likewise agrees that the discretionary conditions of supervised release proposed by the Probation Office are appropriate and should be imposed in this case, except:

- Special condition #7: Mr. Henderson-Spruce has no diagnosed condition of alcohol abuse. He self-reported to the Probation Office that he would drink one cup of alcohol twice a week in the year leading up to his arrest. A condition that prohibits him from ever drinking, even in moderation, is without support in the record. Mr. Henderson-Spruce has no objection to a condition directing him from excessive use of alcohol, an alternative in special condition #7.

Mr. Henderson-Spruce has no objection to proposed special condition #2, 5, 6, 7, 10, 11, or 14. He does object to the following proposed special conditions:

- Special Condition #3 – Special condition #3 requests that Mr. Henderson-Spruce perform at least 20 hours of community service a week if he is not employed within 60 days of release. Mr. Henderson-Spruce notes that searching for and applying for jobs is often a time-consuming process, and that Special Condition #2 requires him to participate in a job skill-training program in that first 60 days as well. To the extent that the community service hours requirement interferes with Mr. Henderson-Spruce's ability to look for gainful employment, this condition should not be imposed.

## CONCLUSION

Mr. Henderson-Spruce maintains that a within-guidelines sentence of time served, followed by temporary placement at the Salvation Army, is sufficient, but not greater than necessary to protect the public, § 3553(a)(2)(c); reflect the seriousness of the offense, just punishment and respect for the law, § 3553(a)(2)(A); and take into consideration Mr. Henderson-Spruce's personal characteristics and circumstances of the offense that are relevant to sentencing.

                Respectfully submitted,

                FEDERAL DEFENDER PROGRAM
                John F. Murphy,
                Executive Director

            By: *s/ Amanda G. Penabad*
                Amanda G. Penabad
                Attorney for Defendant

FEDERAL DEFENDER PROGRAM
55 East Monroe Street, Suite 2800
Chicago, Illinois 60603
(312) 621-8340

# CERTIFICATE OF SERVICE

The undersigned, Amanda G. Penabad, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**DEFENDANT DUSHAUN HENDERSON-SPRUCE'S SENTENCING MEMORANDUM**

was served pursuant to the district courts ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on March 26, 2019, to counsel/parties that are non-ECF filers.

Zakary Freeze
United States Probation office
230 S. Dearborn St. Suite 3400
Chicago, IL 60604

                                                By: *s/ Amanda G. Penabad*
                                                   Amanda G. Penabad
                                                   FEDERAL DEFENDER PROGRAM
                                                   55 E. Monroe St., Suite 2800
                                                   Chicago, Illinois 60603
                                                   (312) 621-8340